PRUNER v. DETROIT UNITED RAILWAY.

1. APPEAL AND ERROR—ARGUMENT OF COUNSEL—EVIDENCE.
   In an action for damages to plaintiff arising out of his wife's injury, it was error for defendant's counsel, in his argument, to use matter not in evidence, after all opportunity to explain it had passed.

2. SAME — INSTRUCTIONS — REQUESTS TO CHARGE — CONTRIBUTORY NEGLIGENCE.

   Where there was no evidence to show that plaintiff's wife was guilty of contributory negligence, it was error for the court to refuse plaintiff's request to charge the jury that she "was free from all negligence," and instead instruct them that plaintiff was bound to satisfy them that the wife did not contribute to her injuries by any negligence on her part.

3. SAME—EXCEPTIONS—SAVING QUESTIONS - FOR REVIEW.

   Where two errors were committed, only one of which was excepted to, and it is impossible to say that the error excepted to was harmless, the judgment will be reversed.

Error to Wayne; Hosmer, J. Submitted October 14, 1914. (Docket No. 97.) Decided September 28, 1915.

Case by Oscar A. Pruner against the Detroit United Railway for damages caused by injuries to plaintiff's wife. Judgment for defendant. Plaintiff brings error. Reversed.

*Merriam, Yerkes & Simons*, for appellant.

*Corliss, Leete & Joslyn* (*William G. Fitzpatrick*, of counsel), for appellee.

OSTRANDER, J. Nancy Pruner, wife of the plaintiff, recovered a judgment against defendant for her personal injuries, and the record made in her case was reviewed by this court. *Pruner* v. *Railway*, 173 Mich. 146 (139 N. W. 48). The plaintiff has sued to recover his damages arising out of her injury, including the expenses incurred by him on account thereof. The record before us contains, as the certificate of the trial judge indicates, the substance of all the testimony and substantially all of the proceedings taken upon the trial. The result was a verdict for defendant, which the plaintiff sought, not successfully, to have set aside and a new trial granted.

Of the conduct of the trial plaintiff makes two principal complaints. He requested the court to instruct the jury that it appeared, without contradiction, that his wife, Nancy, at the time her injuries were received, "was free from all negligence." This the court declined, and, on the contrary, advised the jury that plaintiff was bound to satisfy them that the wife did not contribute to her injuries by any negligence upon her part. This is complained about.

Counsel for defendant, using for the purpose memoranda prepared by plaintiff, called the attention of the jury in his argument to various items of loss set down therein, about which no testimony had been introduced beyond this: That the plaintiff testified he kept a list of items in a memorandum book (not produced), from which list he made up certain exhibits, which were produced, but do not appear to have been offered in evidence, although referred to by the witness. He testified further:

"*Q.* As I understand it, Exhibits 1, 2, and 3, are the list of the items that you seek to recover in this case, or that you sought to recover in this case?

"*Mr. Yerkes:* That is objected to, as not according to the facts. They are a part of what we seek to recover in this case.

"*Mr. Fitzpatrick:* I want the question as it stands.

"*The Court:* Answer the question.

"*A.* Well; could I see them?

"*Q.* Certainly; you have seen them; you prepared them?

"*A.* Certainly; but I don't know what 1, 2, and 3 is now from what I happened to look at yesterday.

"*Q.* All right; look at 1, 2, and 3 now.

"*A.* Yes, sir.

"*Q.* As I understand it, your idea was that you were entitled to recover for all the items mentioned in Exhibits 1, 2, and 3 as damages in this case?

"*A.* I supposed I was."

No testimony was introduced concerning the particu-

lar items referred to by counsel for defendant in his argument. In denying the motion for a new trial, the court said upon this subject:

"Great stress has been laid in the argument of the motion upon remarks of the counsel for defendant and reading from papers which were not offered in evidence in the case. In his opening to the jury, counsel for plaintiff had in his hands a number of pieces of paper, which constituted substantially a bill of particulars of the plaintiff's claim, and from which he afterwards examined the witness. In his address he said he expected to show that the plaintiff in this case had suffered damages in excess of $5,000, and I think to make this sum all of the items on the sheet of paper which he had in his hand were included. It was impossible for the court to say, at the time exception was taken to the argument of counsel as embodying claims not submitted to the jury, from what the counsel for defendant was reading, or whether the papers had been offered in evidence. It would be manifestly unfair to stop the counsel when he was urging a point which it seemed to the court was well founded in the evidence which was submitted, and thus break the thread of his argument, and if the court failed to stop proceedings at that particular time it was only for this reason. Whether the particular sheets were offered in evidence, or were not offered in evidence, I myself was impressed by the fact that in any event the plaintiff and the plaintiff's wife had made the very most of their case, and the argument of counsel for defendant in the main was a very legitimate and proper criticism of these witnesses."

The argument of counsel for defendant was interrupted by counsel for plaintiff, and the record shows what here follows:

"*Mr. Yerkes:* I wish to object to the reference to Exhibits 1, 2, and 3, for the reason that many of the items on those bills were withdrawn, and not put before the jury at all, and no evidence whatever was given in regard to them; for the further reason that it appears that this statement was made up from the little memorandum book, and as I remember these were

simply used as exhibits for him to refresh his recollection, and were not offered in evidence and I submit, if your honor please—

"*Mr. Fitzpatrick:* My recollection is that there were offered in evidence the Exhibits 1 and 2 anyway.

"*Mr. Yerkes:* They were offered—they were identified.

"*The Court:* You may go on at your peril.

"*Mr. Fitzpatrick:* The next item he sought to recover was for a $25 feather bed; why I don't know; there was not any proof of it, but that was too raw; some of them were, for even the counsel to try to go through with it, and that is why we have nothing but his intention.

"*Mr. Yerkes:* It is my intention that this objection covers all his comments on Exhibits 1, 2, and 3, which we did not offer any proof on.

"*Mr. Fitzpatrick:* I do not know why all these feather pillows were required, because his wife was thrown on a sidewalk and was injured in July, 1909— twelve embroidered pillow slips, twelve embroidered sheets, thirty-two sheets—that they were going to throw in here to swell the total for damages. The next was twelve bath towels; the next two dozen bath towels, two more bath towels, two dozen of another kind of towels, and two dozen linen towels, aggregating in value about $30, was some more of the items he had in his mind to ask you to allow for damages, and three yards of pattern tablecloth, cost $11. I did not hear any evidence of anything being done to tablecloths, gentlemen of the jury, or hear that there were tablecloths which were in any way injured. But this is only a circumstance. One dozen napkins to match the tablecloth, $8.00 asked for that; and four night dresses, three night dresses, three more, another night dress, and one doily for 50 cents was another item that was asked for damages in this case; and two dresser scarfs, $2, and a table tray or table scarf, at $2 more, were claimed. Now, we come to something awfully illuminating, and it seems to me awfully, awfully clever upon the part of this man to make a claim for in this case. I do not see what he could have been thinking of when he made this item. This happened on the 19th of July, the hot summer time, and the woman did not

have a hat on; she was carrying a sunshade; that is
the undisputed evidence in this case; and we are asked
to respond here to one tailored suit destroyed, $22.50;
one black silk dress, $50; one green silk dress, $12;
one green silk waist, $10; one fur coat, $60; one black
ostrich feather, $8; and another black ostrich tip, $5—
was some more of the items of damages that was in
his mind to ask you men to allow him in this case. Oh,
he was going to have it good and big, so there would
not be any question of the amount of the award. And
then it seems that Oscar himself was hurt in some way,
or at least there was some injury done to Oscar's per-
sonal apparel, for which he was going to ask you men
to make an allowance in your verdict; and what was
it was injured so far as Oscar alone was concerned—
Oscar—underwear, hosiery, two wool suits, $10. I did
not know there was any claim for Oscar alone; not a
word in this case, or anything connected with it, that
would justify him when he made up his claim—what
he said to you he was going to swear to as his damages
in this case—that would justify him, if he was honest
and fair about it, in making a claim for his underwear
to the amount of $10, fifteen pair of woolen hose from
November 1, 1909, to March 1, 1910; some hose I tell
you in that space of time, but he was asking $3.75 for
it. He had fifteen more pair of wool hose from No-
vember 19 to April 19, 1911, at the same amount. Then
George Pruner got in on the show. He had two
wool suits of underwear, I suppose at $10 for the two
suits, that he was going to ask damages for, and fifteen
pair of woolen stockings at 50 cents a pair, $7.50; fifteen
pair wool stockings again at $7.50; and O. A. Pruner's
cotton hose, thrown away for lack of repair, $6.37;
that was another item that he was asking recovery for
when he came in, and had in his mind, and he was
going to ask you gentlemen to allow him for in this
case; and George Pruner, poor little fellow, 26 years
of age—22 years of age at the time this accident hap-
pened—the father was coming in before a jury in the
Wayne circuit court, and was going to ask you to allow
damages to him because Mamma was not able to darn
George's socks; that is all it amounts to in round, plain,
everyday language; that is what we have so far as
George was concerned—seventy-five pairs of cotton

hose, seventy-five pairs thrown away because Mamma was not able to darn them. Now he wanted you to award damages in the sum of $9.32, and then there was fifteen pair of silk hose, fifteen pair of silk hose that George had that he wanted you—his father wanted you—to allow him damages for because he had to throw them away before they were worn out, because his mother was not able to darn them.

"Well, gentlemen of the jury, there are more things here, but it would only be wearisome—it would be more or less repetition—to go through with them. I have told you enough. I have shown you enough to convince any fair-minded men that it was the intention of this man, when he came into court, to make his claim for damages just as big as he could, and if he would sin in these respects he would sin in others, and if he would claim for a fur coat and two silk dresses, although the woman never had them on her back at the time, could not possibly have had, he would make a claim for $1,700 for hire for a girl and for $1,150 doctor bills; it would be an easy matter for him, going about this thing in that way, to put the damages so high that there could not be any question that there never would be any want so far as Oscar alone, personally, was concerned, if he would get the damages which he was claiming in this case at your hands; but I do not think you men, with your experience of the affairs of life, would stand for things of that kind. And I want you to remember, too, that a man who would put up a claim of that kind would be the man who would insist on every member of the family, wife, and son, and daughter, and everybody else, making it good for him, and that may be the reason why we have today this claim here presented at this time by Mr. Pruner, and it may explain Dr. Huson's testimony that Mrs. Pruner will get well as soon as she is through with these lawsuits."

The conduct of counsel in making the argument is complained about. This is a case in which a special verdict would have been of value. If it was clear that the jury found that defendant's negligence was not the cause of the injuries to plaintiff's wife, and so the cause of such damages as plaintiff suffered, the argu-

ment of defendant's counsel which has been referred to need not be characterized. If there was testimony tending to prove that the conduct of plaintiff's wife contributed to her injuries, we might assume that the verdict was unaffected by that portion of the argument to which attention has been called.

It is the theory of plaintiff that defendant's single truck car, ascending an incline to a bridge over a railroad track, at a high rate of speed, seesawing, struck the planking of the sidewalk, and moved or tore up some of the planks upon which his wife was walking, so that she was thrown down and injured. It is the theory of defendant, in so far as it is indicated in the testimony, that the woman fell down as the car was passing, she being upon and traveling over the sidewalk, and that the car and its movements had nothing to do with her falling. But we find no testimony tending to prove that, if defendant was negligent as alleged, plaintiff's wife was guilty of any conduct contributing to her injury. In giving reasons for denying a new trial, the court does not mention the charge upon the subject of contributory negligence, although it is made a ground of the motion. There was no issue made by the testimony upon the subject, and it was error to refuse plaintiff's request for such an instruction.

It may be argued that, if there was no testimony tending to prove the contributory negligence of plaintiff's wife, the instruction was harmless, and, inasmuch as plaintiff was clearly put to some expense on account of the injury, the jury, in returning a verdict for defendant, must have found the defendant free from negligence. Counsel for the defendant, however, defending the instruction, argues that it would have been error to refuse it. He says:

"Mrs. Pruner could and should have seen what these people saw, if they are telling the truth. She was

perfectly familiar with the way the tracks lay, and how close they were to the sidewalk at the lower end of the incline; also that they were away clear of the track further up towards the crest, the direction from which she was approaching. If it was likely that, owing to the speed at which the car was being operated, the teetering would continue to the point of bringing the fender or running board in contact with the walk, obviously the walk was not a place of safety, but was a place of great danger. Into this place of danger she might not prudently venture. To have looked and observed the situation when she left the top of the hill was the work of the briefest moment; to have observed again as she came further down, and before she got to the place where the track was so close to the sidewalk that the car overhung, was likewise a slight task. Did she do it? If she did, should she have continued on, meeting this rapidly approaching car, that must pass her where the danger was greatest? Or should she have stopped and waited for the car to go by before proceeding?

"She might not be inattentive to her surroundings. Abstraction and absent-mindedness do not excuse. If she saw and understood the possibility, and took a chance that nothing would happen, then she was not diligent.

"Some or all of these matters were necessarily in the case. They could not be decided by the court as a matter of law. They were for the jury, and the jury evidently believed, either that there was no negligence on the part of the defendant shown, or that Mrs. Pruner was herself careless and inattentive to her safety."

The plaintiff and every other pedestrian using the sidewalk had the right to assume, and the court might well have so declared, that sidewalks and street car tracks, in continuous use, are presumably not so laid with reference to each other that a passing car, even if it is carelessly operated, is a menace to persons using the sidewalk. In the absence of knowledge that a street car fender may overhang, or strike, a sidewalk, the public, using the walk, has no occasion to expect,

or suspect, danger from a passing car. There is no testimony tending to prove that plaintiff had such knowledge. The jury may have adopted reasoning similar to that of counsel for defendant, in the absence of any but the most general of instructions from the court that they must find plaintiff free from contributory negligence.

Two palpable errors were committed—one the submission to the jury of the question of contributory negligence of plaintiff's wife, the other the argument of counsel in which he used matter not in evidence, after all opportunity to explain it had passed, in which he proceeded by leave of the court, at his peril, after objection.

It is urged in a supplemental brief for defendant that counsel for plaintiff did not except to the ruling which permitted counsel for defendant to continue the argument, and therefore the point is not available. No exception was taken, and consequently, if no other error was made out, we should not reverse the judgment. But the fact that such an argument was made is persuasive of the conclusion that it is impossible to say that the other error was harmless—makes it more than doubtful that the jury found the defendant free from negligence, or plaintiff's wife guilty of contributory negligence.

We are constrained to reverse the judgment and order a new trial.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY heard the arguments in this cause, but took no part in this decision.